# In re Aliquippa Borough Council Petition

*Vincent J. Restauri, Jr.* and *Joseph M. Stanichak,* for petitioner.

*Clarence D. Neish,* for borough taxpayers.

*John A. Knorr* and *Oran W. Panner,* for creditors.

WALKO, *J.,* October 5, 1979—This matter is before the court on the petition of the council of the Borough of Aliquippa for authority to fund unfunded debt pursuant to the provisions of the Local Government Unit Debt Act of April 28, 1978, P.L. 124, 53 P.S. §6780-1 et seq. Both the original and amended petitions set forth various items which constitute the unfunded debt in the total amount of $1,040,907.37.[1]

After due notice to the borough and the taxpayers thereof, the matter was heard before this court on September 7, 13 and 17, 1979. Because of the important legal and factual questions involved in this

---

1. The borough averred the following obligations make up the debt: Vendors $478,146.57; Aliquippa School District $135,372.80; B.F. Jones Memorial Library $16,000; Borough Construction Fund $161,388; Borough Pension Plans $161,388.

matter, an extended discussion of the act and its application to the borough's request for relief is in order.

Recognizing that local government units may on occasion experience unforeseen fiscal problems and, accordingly, need means of relief, the General Assembly enacted the 1978 Debt Act and similar predecessor statutes.[2] Generally, the act regulates not only the manner in which debt may be incurred but also provides for conditions and limitations on the amount of debt as well. For purposes of this case, the two most critical provisions of the act are sections 209 and 210. See 53 P.S. §6780-209 and 210. Section 6780-209 defines unfunded debt as:

". . . [O]bligations of *the same or a prior year* incurred for current expenses (including tax anticipation notes), due and owing or judgments against the local government unit . . . for the payment of either of which category the taxes and other revenues remaining to be collected *in the fiscal year* and funds on hand will not be sufficient without a curtailment of municipal services to an extent endangering the health or safety of the public . . . *and* the local government unit either may not legally levy a sufficient tax for the balance of the fiscal year, or a sufficient tax, if legally leviable, would not be in the public interest. Unfunded debt shall not, however, include debt incurred under this act nor obligations in respect of a project. . . ." (Emphasis supplied.)

---

2. Prior enactments included: Municipal Borrowing Law of June 25, 1941, P.L. 159, codified at 53 P.S. §6101 et seq., repealed by Local Government Unit Debt Act of June 12, 1972, P.L. 781, sec. 1307(a)(1), codified in 53 P.S. §11-101 et seq., reenacted and amended, 53 P.S. §6780-1 et seq.

Section 210(a) of the act provides that whenever the local governing body is of the opinion that it has outstanding unfunded debt it may petition the court of common pleas requesting approval for funding such debt. Additionally, section 6780-210(a) supplies criteria to guide the court in reaching a determination as to whether to grant or deny the request by providing as follows:

". . . [T]he court shall make an order granting authority to fund all or a part of such unfunded debt if the court shall find that such unfunded debt is a lawful obligation of the local government unit, that there has been an unforeseeable decline in revenues, or that taxes levied have not produced the revenues anticipated or that it was not reasonable to foresee such obligation; that paying such debt by curtailing municipal services will be dangerous to the public health, safety or education, and that it is not feasible or not in the public interest to levy additional taxes in the current fiscal year."

From the wording of the legislative enactment, it appears that four essential elements must manifest themselves before the court can grant approval, the failure of any element requiring the court to disapprove. Accord, New Castle Area School District Application, 2 D. & C. 3d 260 (1977). These four criteria are: 1. That such unfunded debt is a lawful obligation of the local government unit, 2. that (a) there has been an unforeseeable decline in revenues, or (b) taxes levied have not produced the revenues anticipated, or (c) it was not reasonable to foresee such obligations, 3. that paying such debt by curtailing municipal services will be dangerous to the public health, safety or education, and 4. that it is not feasible or not in the public

interest to levy additional taxes in the current fiscal year.

Therefore, it is incumbent upon this court to ascertain (1) whether the obligations, represented as due and owing, fit within the definition of unfunded debt and, (2) assuming the obligations are statutory unfunded debt, whether all four criteria of section 6780-210 have been satisfied.

The opening phrase of section 6780-209 defines unfunded debt as "obligations of the *same or a prior year* incurred for current expenses . . . due and owing." Undeniably, all the obligations are due and owing; in fact, two of the many creditors arguably seeking some sort of payment on their extension of credit to the borough participated in the hearings. Through the testimony of several officials, the borough asks for relief from debts and various obligations incurred and unpaid dating from 1975 and 1976. Audits performed by a certified public accountant at the borough's request for use at the hearing indicate that deficits in the General Fund balance have been carried forward since 1976. There is every indication that the borough will again experience a deficit in 1979 whether or not the proposed bond issuance is granted. The historical facts point clearly to one conclusion, namely, the borough has operated and does operate on a clearly unsound fiscal basis. Contrary to the literal language of the statute, then, funding is requested not for indebtedness of *this or a prior year,* but rather for *this and* the past four *years.* Clear statutory language should not be cast aside for to do so would result in an abdication of this court's responsibility to the legislature. Bond counsel for the borough submitted in his oral summation that such a restrained interpretation of section 6780-209 is

unwarranted. Nevertheless, the court is inclined to disagree for a number of reasons.

First, the legislature was specific in enacting the statute; it did not state in section 6780-209 obligations of *this and* prior *years*. Rather, unfunded debt was defined in the disjunctive and limited to this *or a prior year*. This court must abide by the rule of statutory construction which provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. §1921(b).

Second, the broad intent of the legislature has been to encourage and require local government bodies to practice sound fiscal policy. That would necessarily entail passage of reasonable budgets sufficient to cope with the need of the public. As the legislature is and has been aware, local government units often encounter financial distress near the conclusion of a fiscal year or in the beginning of another for reasons initially unforeseeable. Presumably the Local Government Unit Debt Act was enacted as a means to cure that distress in a most expeditious manner. The borough is of the opinion that the act is a vehicle whereby local government units, which roll their deficits over from year to year, compounding an already bleak financial picture, can seek relief from the court once "their backs were against the wall." Clearly, the act is not the panacea the borough believes it to be. It seems highly unlikely that the legislative intent was to permit the grant of a bond issuance after years of deficit spending. Manifestly, it was not enacted to cure prolonged, known fiscal inadequacies, but rather, to cover those emergencies or other expenditures which were generally unforeseeable, or

where there has been an unforeseen decline in taxes or revenues. Any other interpretation of the act and especially section 209 would be a disservice to the legislature for it would attribute to them a condonation of such fiscal management as displayed to this court in this instance.

Although there is a dearth of appellate decisions interpreting section 6780-209, several unfunded debt petitions filed in the Court of Common Pleas of Beaver County over the past several years seem to support the foregoing interpretation. This very petitioner was before the Court of Common Pleas of Beaver County in 1975 seeking relief for unfunded debt. In that instance, the petition was granted for debts of only one year. See In Re Petition of The Borough of Aliquippa to Fund Unfunded Debt, No. 96 Misc. Docket 1975.

A third rationale can be drawn from a comparison of prior governing statutes with the current statute. Much of the current act's language was taken from the 1941 Municipal Borrowing Law[3] which provided in section 502(a):

"Whenever any municipality has any unfunded debt, contracted for *current* operating expenses, which is due and owing and the financial condition of the municipality is such that . . . it cannot meet such debt *within the fiscal year* without an unreasonable curtailment of municipal services or the levy of an excessive tax they may by petition apply to the court. . . . After hearing . . . the court shall make such order granting authority to fund such

---

3. Act of June 25, 1941, P.L. 159, codified at 53 P.S. §6101 et seq., repealed, Act of June 12, 1972, P.L. 781, sec. 1307(a)(1), codified in superceded 53 P.S. §11-101 et seq.

unfunded debt contracted for *current* operating expenses in whole or in part, if it believes the proposed funding will accomplish the relief intended, or refusing to permit the municipality to fund the same as it deems just and equitable." (Emphasis supplied.)

Unlike the Local Government Unit Debt Acts of 1972, P.L. 781, sec. 509, codified in 53 P.S. §11-509 (since superceded) and of 1978, 53 P.S. §6780-209, section 502(a) of the 1941 Act literally extended only to debts of the current year. Obviously, the two recent statutes evince an intent to enlarge the scope of available relief by including, as an alternate, the funding of debts incurred in a prior year. Ordinarily, changes in the language of a statute indicate a change in legislative intent: Masland v. Bachman, 473 Pa. 280, 289, 374 A. 2d 517, 521 (1977). By no means, however, can it be said that the legislative grace should extend beyond the time periods specified in the act.

In light of this comparison of language, it is clear that if the legislature had intended to extend the privilege of funding unfunded debt beyond "this or a prior year" it would have specifically said so. Where the language of a statute is not equivocal and the purpose of the legislation would not be defeated by a literal application of its wording, plain words should not be disregarded under the pretext of pursuing a given purpose: Com. v. Sun Ray Drug Co., 360 Pa. 230, 239, 61 A. 2d 350, 354 (1948).

On the basis of the foregoing discussion, the borough's request to fund unfunded debt of $1,040,907.37 should be denied. This is not *the* basis, however, upon which this court denies the petition. Even conceding that the interpretation of section 6780-209 is too confining, thus qualifying

the debts as unfunded debt, the court is compelled to determine whether the four-prong test of section 6780-210 has been satisfied. For the moment the court concedes that the borough has proven that three of the four criteria have been met, namely, (1) the obligations were lawfully incurred, (2) payment of the debt by curtailing municipal services would be dangerous to public welfare and (3) it is not feasible nor in the public interest to levy additional taxes in this fiscal year. That leaves the determination of whether the borough has satisfactorily proven any of the three alternative elements set forth in the second enumerated criterion. It must be remembered that the borough need only prove one of the three, since they are set out in the disjunctive, in order to qualify for relief.

In reference thereto, the borough alleges that its current financial crisis is due in part to an unforeseeable decline in revenues. Although this may be partially true, it does not approach any sum near the amount for which approval is sought. It is also interesting to this court that although a new source of revenue through a refuse collection fee was validly enacted, because of public displeasure, it has never been implemented. Estimates indicate that the potential revenue to be generated from that source alone would be in excess of $220,000.

When these facts are weighed against the sketchy averments concerning the unforeseeable nature of the decline in revenues, one can only conclude that the decline was indeed, not unforeseeable, if at all present. One court of common pleas which passed on the issue of unforeseeable decline in revenues has stated that a finding of unforeseeable decline in revenues must be bottomed upon some reasonable factual basis that is established by the evidence in the record: New Castle Area School

District Application, supra. Clearly, no reasonable basis has been established here to convince the court that the decline in revenues was unforeseeable nor is the court of the opinion that such a material decline did in fact take place.

In addition, the borough alleges that the problem was compounded by the fact that taxes levied have not produced the revenues anticipated. At most, the evidence indicates an overestimation of amounts to be collected for only one year and this did not result in any sizeable revenue loss when now compared to the "unfunded debt" total before the court. Furthermore, experience shows that the borough will eventually realize 100 percent of its taxes, even though at times from two to five percent remained uncollected. It is noteworthy to point out that the borough has not been unaware of deficits in budgets of prior years. It chose to exact taxes in smaller increments than were necessary. Gradual tax increases along with fiscal austerity could possibly have avoided its current financial position. Overall, there is every indication that taxes have in fact produced the revenues anticipated. Thus the borough has failed to carry its burden of proof on this element also.

Finally, the borough alleges that it was not reasonable to foresee certain obligations which arose during severe winter weather and other occasions. While that may be true, a great number of these obligations were not unforeseeable. Thus the sum total of the unforeseeable obligations is but a small fraction of the total unfunded debt. To grant relief in that amount to cure the borough's financial dilemma would be comparable to attempting to extinguish a forest fire with a garden hose. Simply put, the borough would not appreciably advance its

financial status were we to grant partial relief in such an amount.

We are not unmindful of the possible ramifications this decision may hold. The borough has failed, however, to meet its burden of proof as to the criteria established in section 6780-210. The hardship or equity of a case cannot override the plain words of a statute; the legislature, not the court, must correct the evil if any exists: Frost v. Metropolitan Life Ins. Co., 337 Pa. 537, 540, 12 A. 2d 309, 310 (1940).

This court is reminded of the admonition given to the borough the last time it sought to fund unfunded debt. President Judge Sawyer strongly suggested "that in view of its experience this current year, that the borough in 1976, and in future years, should consider carefully the matter of appropriate budgeting for required overtime and extra longevity pay and for reasonable amounts of emergency expenditures, and should provide for appropriate tax levies therefor." Petition of the Borough of Aliquippa to Fund Unfunded Debt, No. 96 Misc. Docket, 1975. Those very remarks aptly apply today with regard to the entire budgetary processes of not only this borough but of all such municipal bodies.

Although the court believes, in accordance with the clear statutory language of section 6780-209, that the obligations due and owing are not properly represented as unfunded debt, even if they were to be so characterized, they cannot be relieved since the borough has failed to satisfy the prerequisites of section 6780-210. Specifically, the borough has failed to prove that there has been an unforeseeable decline in revenues or that taxes levied have not produced the revenues anticipated or that it was

32

not reasonable to foresee the greater part of the obligations.

For all of the foregoing reasons the petition of the Council of the Borough of Aliquippa for authority to fund unfunded debt in the sum of $1,040,907.37 must hereby be denied, and we, therefore, make the following

### ORDER

And now, October 5, 1979, the petition of the Council of the Borough of Aliquippa for authority to fund unfunded debt in the sum of $1,040,907.37 is denied.