In Re: Petition of the Council of the Borough of Aliquippa, Beaver County, Pennsylvania, for the Authority To Fund Unfunded Debt. Borough of Aliquippa, Appellant.

Argued December 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judges MENCER and PALLADINO did not participate.

*Philip Baskin*, with him *Victor R. Delle Donne* and *Alan C. Jacobson, Baskin and Sears*, and *Keith R. McMillen, Duplaga, Tocci, Palmieri & McMillen*, for appellant.

*Daniel L. Haller*, with him *James P. O'Connell* and *Lawrence J. Ringer*, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, April 2, 1981:

The Borough Council of Aliquippa appeals a Beaver County Common Pleas Court decision denying its petition seeking authorization to issue general obligation bonds or notes grounded on the "unfunded debt" provisions of the Local Government Unit Debt Act.[1] Specifically, the Borough appeals that part of the court's order which denied unfunded debt status for (1) a judgment, entered April 28, 1980, in favor of Jones & Laughlin Steel Corporation (J & L); the Borough had denied J & L's $1,215,000 tax assessment for the years 1976-80, and (2) the balance due Duquesne Light Company on a judgment entered December 19, 1979, requiring the Borough to pay to Duquesne, from the proceeds of a successful bond issue the balance of delinquent electric bills.[2]

We affirm in part and reverse in part.

Critical to this Court's determination is an understanding of the term "unfunded debt" as used in the Local Government Unit Debt Act. The court below found that the Borough had assessed and collected excess taxes from J & L in the amount of $769,777 for the years 1976-79, but that this "claimed indebtedness," resulting from the order of the tax assessment appeal cases, did not qualify for "unfunded

---

[1] Act of April 28, 1978, P.L. 124, 53 P.S. §6780-1 et seq. Prior acts included the Municipal Borrowing Law, Act of June 25, 1941, P.L. 159, 53 P.S. §6101 et seq., repealed by the Local Government Unit Debt Act, Act of July 12, 1972, P.L. 781, as amended, formerly 53 P.S. §11-101 et seq.

[2] The lower court found that the $400,000 tax anticipation note dated July 1, 1980, due the Mellon Bank N.A. on October 31, 1980, and the promissory note executed on January 30, 1980, and due July 30, 1980, in the amount of $55,000, payable to the Aliquippa Municipal Water Authority, both properly qualified for unfunded debt status under the Act and could provide the basis for issuing the necessary general obligation bonds.

debt" status under the Act. The April 28, 1980 order set the refund amount due J & L, left the details of the Borough's refund plan to the parties without setting a due date and retained jurisdiction over the terms of the plan. The court below concluded that the petition for funding the obligation to J & L via "unfunded debt" must fail because the refund was not a "debt" as defined in Section 102(a)(1) of the Act[3] since by exception to the definition of "debt," Section 102(a)(1)(iii), the agreed order plus the lack of any specific refund date made the refund not yet due, thus making it a payment "payable in future years under ... contracts or other forms of agreement...." The court reasoned that if the judgment could not meet the qualifications of or fell under one of the exceptions to the term "debt" in the definitional section of the Act, then that obligation could not be "unfunded." The court below erred in its definitional application.

---

[3] Section 102(a)(1) provides:
Definitions
(a) *As used in this act with respect to classifications of debt unless the context clearly otherwise requires:*
(1) 'Debt' means the amount of all obligations for the payment of money incurred by the local government unit, whether due and payable in all events, or only upon the performance of work, possession of property as lessee, rendering of services by others, of other contingency, except: (i) current obligations for the full payment of which current revenues have been appropriated, including tax anticipation notes, and current payments for the funding of pension plans;
(ii) obligations under contracts or supplies, services and pensions, allocable to current operating expenses of future years in which the supplies are to be expended or furnished, the services rendered or the pensions paid;
(iii) rentals or *payments payable in future years under* leases, guarantees, subsidy *contracts or other forms of agreement not evidencing the acquisition of capital assets.* (Emphasis added.)
53 P.S. §6780-2(a)(1).

Under the Act, the term "debt" clearly has a number of meanings and references different from those of unfunded debt. The Act's definitional section allows for "debt" and "unfunded debt" to have non-equivalent meanings by the wording at the beginning of Section 102(a):

> *Definitions* —
>
> (a)  As used in this act with respect to classifications of debt *unless the context clearly otherwise requires*:
>
> (1)  'Debt' means.... (Emphasis added.)

53 P.S. §6780-2.
The definitional section of the term of art "unfunded debt" appears later in the Act (*see* 53 P.S. §6780-209). The definitional language of "unfunded debt", Section 509,[4] has a unique meaning and textual application. The language provides for two classifications of unfunded debt:

> Obligations of the same or a prior year incurred for current expenses (including tax anticipation notes), due and owing *or* judgments against the local government unit entered by a court of competent jurisdiction after adversary proceedings.... (Emphasis added.)

53 P.S. §6780-209.
"Obligations" must be due and owing and incurred for current expenses in either the same or a prior year. "Judgments" must be entered against a local government unit "by a court of competent jurisdiction after adversary proceedings." After these initial classifications are made, Section 509 continues with the following language:

> [F]or the payment of either of which category [either judgments or obligations] the taxes and

---

[4] 53 P.S. §6780-209 is now found in Section 27 of the Act reenacted in 1978. We refer to Section 509 of the 1972 Act so as to be consistent with the lower court opinions.

other revenues remaining to be collected in the fiscal year and funds on hand will not be sufficient without a curtailment of municipal services to an extent endangering the health or safety of the public or proper education of school children, and the local government unit either may not legally levy a sufficient tax for the balance of the fiscal year, or a sufficient tax, if legally leviable, would not be in the public interest. (Explanation added.)

53 P.S. §6780-209.

Thus, obligations *or* judgments are classed unfunded debt *only if*: (1) the taxes and other revenues. remaining to be collected in the fiscal year and funds on hand will not be sufficient without a curtailment of minicipal services to an extent endangering the health or safety of the public or proper education for school children, *and* (2) the local government unit may not legally levy a sufficient tax for the balance of the fiscal year *or* a sufficient tax, if legal, would be contrary to the public interest.

Initially, we are convinced both by the record and the analysis of the court below that the Borough is in such perilous financial straits that the funds on hand or potential funds from taxes will not be sufficient to avoid endangering the health and safety of the public and that a significant tax would be, if leviable, contrary to the public interest. Thus, for both the J & L judgment and the Duquesne Light bill, the second part of Section 509 is satisfied. We will now turn to the question of whether the respective monies at issue qualify for unfunded debt status.

### J & L Tax Assessment

The Borough argues that it has a judgment created by the Court Order of April 28, 1980 to repay J & L $770,000 in excess taxes paid. Further, the Borough

contends that the $445,000 in anticipated revenue for fiscal 1980 now uncollectible as a result of the tax assessment appeal also qualifies as unfunded debt since the judgment due J & L consists of two parts: the actual monies ordered refunded by the court, and the projected revenue decreases brought about by that decision. We shall deal with each separately.

The money owed J & L arose from a successful tax appeal brought by J & L against the Borough for the years 1976-79. After litigation, the court entered an agreed order dated April 28, 1980, finding the amount of refund due J & L to be $769,777. Quite simply, the debt, though not yet reduced to an agreed plan or repayment *has* been reduced to a judgment as required by Section 509. Thus having already determined the perilous financial situation of the Borough and the fact that the $769,777 owed J & L has been reduced to a judgment, we see no choice but to term that judgment as unfunded debt for purposes of the Act.

In addition to the $769,777 court-ordered refund,[5] the Borough estimated a $445,000 reduction in its revenues for fiscal 1980 as a direct result of the assessment appeal, added this revenue loss in uncollected

---

[5] Although the Borough in its statement of matters complained of on appeal, filed with the Court of Common Pleas of Beaver County's Prothonotary on December 18, 1980, specifically appealed only the disallowance of the $769,777 representing the sum of the excess taxes paid by J & L and the $200,000 contained in the agreement with the Duquesne Light Company, counsel for the Borough now appears to include the $445,000 anticipated revenue loss figure as petitioned for unfunded debt. To avoid any confusion as to the latter amount, we shall decide its status. *See In re: Appeal of Jones & Laughlin Steel Corporation from the 1976, 1977, 1978, 1979 and 1980 Real Estate Tax Assessment of its Aliquippa Works' Properties Within the Borough of Aliquippa and the Township of Hopewell, Beaver County, Pennsylvania,* Nos. 302 of 1976, 123 of 1977, 1104 of 1977, 406 of 1978, 448 of 1979, 449 of 1979, and 340 of 1980.

funds to the refund due, and projected a $1,215,000 obligation to J & L eligible for unfunded debt status. We cannot agree with this proposition.

Although it is not clear where this portion of Borough's proposed unfunded debt appeared in litigation, it is apparent that this $445,000 figure is not an amount the Borough must refund nor is it an obligation or judgment owed to J & L. Rather, it is an overestimate of the taxes to be paid by J & L to the Borough for fiscal year 1980. That overestimate in tax revenue can, in no way, be classified as either an obligation "due and owing" or a "judgment against" the Borough. The money has neither been collected nor has any judgment ordered its refund. The $445,000 is simply an overestimation of revenues and does not qualify as unfunded debt. This is not to say, however, that because the Borough underestimated its revenues for year X, it could not classify resultant obligation or judgment in year Y as unfunded debt for purposes of the Act. We concur in the lower court's treatment of the projected revenue loss as merely an overestimation of projected tax revenues.

### Duquesne Light Debt

Relying on the doctrine of res judicata, the court below held that the "obligation" to Duquesne Light could not be classified as unfunded debt. This is the chronology: The Borough had petitioned the Beaver County Court in September 1979 to permit funding for unfunded debt so that it could pay the Duquesne Light Company's billings. That court in *In Re: Petition of the Council of the Borough of Aliquippa*, 14 Pa. D. & C.3d 21 (1980) (filed October 5, 1979, J. WALKO), denied the petition. This Court in an unreported per curiam decision (No. 44 T.D. 1979, filed December 20, 1979) affirmed Judge WALKO's decision. The court below in the instant appeal found

that the Duquesne Light bill had been previously adjudicated the prior year and dismissed the petition for funding the Duquesne Light bill citing res judicata. We disagree.

At the time of Judge WALKO's order, no judgment had been entered against the Borough for Duquesne Light. However, after the October 5, 1979 decision, Duquesne Light was successful in obtaining judgment against the Borough on December 19, 1979.

Here the court below, although having the same creditor and bills, has an additional factor, to wit: a judgment. This Court, in *McCarthy v. Township of McCandless*, 7 Pa. Commonwealth Ct. 611, 617, 300 A.2d 815, 820 (1973), reiterated the four elements of res judicata:

(1)  Identity of the thing sued upon or for;

(2)  Identity of the cause of action;

(3)  Identity of persons and parties to the action; and

(4)  Identity of the quality or capacity of the parties suing or sued.

It is manifestly clear that in the interim the identity of the thing being sued upon, that is an obligation, has changed, thus making the doctrine of res judicata inapplicable. *Bearoff v. Bearoff Bros., Inc.*, 458 Pa. 494, 327 A.2d 72 (1974), and *Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 415 A.2d 53 (1980).

Because the definition of unfunded debt is disjunctive, *i.e.*, obligations *or* judgment, the judgment entered subsequent to Judge WALKO's opinion but prior to this action changed the identity of the thing sued upon. To restate it, previously the Borough had petitioned for the funding of an *obligation*. Now, the obligation is reduced to a judgment, and the petition has its foundation on that judgment.

## Mandated Judicial Inquiries

Even after a determination that both the judgment of Duquesne Light and J & L are unfunded debt, the Borough has to overcome the additional four-pronged test of Section 510(a) of the Act[6] which provides:

> Whenever the governing body of a local government unit shall be of the opinion that it has outstanding unfunded debt, it may, by petition to the court of common pleas ... setting forth the facts, request approval for the issuance of bonds or notes to fund the unfunded debt. After hearing, on such notice to the local government unit and its taxpayers as the court may prescribe, the court shall make an order granting authority to fund all or a part of such unfunded debt if the court shall find *[1] that such unfunded debt is a lawful obligation of the local government unit, [2] that there has been an unforeseeable decline in revenues, or that taxes levied have not produced the revenues anticipated or that it was not reasonable to foresee such obligation; [3] that paying such debt by curtailing municipal services will be dangerous to the public health, safety or education, and [4] that it is not feasible or not in the public interest to levy additional taxes in the current fiscal year.* (Emphasis added.)

53 P.S. §6780-210(a).

The issuance of bonds under the Act depends upon both a determination by the court of whether (1) the obligation or judgment is indeed unfunded debt, *and* (2) whether all four criteria set out in Section 510(a)

---

[6] This is a reference to Section 510(a) of the 1972 Act. Section 29(a) of the 1978 Act is the re-enactment of Section 510 of the 1972 Act found at 53 P.S. §6780-210(a). *See* n.2.

have been satisfied; *i.e.* (i) that the unfunded debt is a lawful obligation of the local government unit; (ii) that there has been an unforeseeable decline in revenues, *or* that the taxes levied have not produced the revenues anticipated, *or* it was not reasonable to foresee these obligations; (iii) that paying the (unfunded) debt by curtailing municipal services will be dangerous to the public health, safety or education, and (iv) that it is neither feasible nor is it in the public interest to levy additional taxes in the current fiscal year. *See New Castle Area School District Application,* 2 Pa. D. & C.3d 260 (1977).

After a careful review of the financial material and judgments in the record, we agree with the court below's assessment as to criteria (i) the legality of the unfunded debt obligation and (iv) the Borough's inability to raise additional taxes. We are also satisfied that criteria (iii) endangering the public's health, safety or education by curtailing municipal services to pay the debt is also satisfied. We must then decide whether there has been an unforeseeable decline in revenues *or* that the taxes levied have not produced the revenues anticipated *or* it was not reasonable to foresee these obligations (*i.e.* criteria (ii)).

As already stated, criteria (iii) has been satisfied because the taxes levied did not produce the revenues anticipated. Although not as clear, our review of the record reveals that there was not only an unforeseeable decline in revenues, but that as a matter of law it was not reasonable to foresee these obligations. Thus, the judgments favoring J & L and Duquesne Light qualify for funding as unfunded debt under the provisions of the Act.

Accordingly, we affirm the court below insofar as it denies the Borough of Aliquippa permission to fund unanticipated revenue losses of $445,000 as unfunded debt, but reverse insofar as it denies the Borough

authorization to fund the Jones & Laughlin Steel Corporation judgment and the judgment entered in favor of the Duquesne Light Company as unfunded debt.

ORDER

The Beaver County Common Pleas Court decision dated October 17, 1980, is affirmed insofar as it denies the Borough of Aliquippa permission to fund unanticipated revenue losses of $445,000 as unfunded debt but reversed insofar as it denies the Borough authorization to fund the Jones & Laughlin Steel Corporation judgment and the judgment entered in favor of the Duquesne light Company as unfunded debt. This case is remanded to the court below for proceedings consistent with this opinion and the provisions of the Pennsylvania Local Government Unit Debt Act, 53 P.S. §6780-1 *et seq.*

Judge WILKINSON, JR., concurs in the result only.

Judge WILLIAMS, JR., dissents.

The decision in this case was reached prior to the expiration of the term of Judge WILKINSON, JR.