In Re: Petition of the Board of School Directors of the Fort Cherry School District, Washington County, Pa. for authority to levy tax rates etc. Board of School Directors of the Fort Cherry School District, Appellant.

Argued March 4, 1982, before Judges CRAIG, MAC-PHAIL and DOYLE, sitting as a panel of three.

*Robert T. Crothers*, with him *Mary Drake Korsmeyer, Peacock, Keller, Yohe, Day & Ecker*, for appellant.

No appearance for appellee.

OPINION BY JUDGE CRAIG, April 2, 1982:

The Board of School Directors of the Fort Cherry School District (district) appeals a Washington County Common Pleas Court decision denying its petition for authorization to issue general obligation bonds or notes based upon the ''unfunded debt'' provisions of the Local Government Unit Debt Act.[1] We affirm.

---

[1] Act of April 28, 1978, P.L. 124, 53 P.S. §§6780-1 through 6780-609, which reenacted, amended and revised the Local Government Unit Debt Act, Act of July 12, 1972, P.L. 781, *as amended, formerly* 53 P.S. §§11-101 through 11-1308.

The lower court approved the district's request to maintain the tax rate at 124 mills.

Although the district's petition originally alleged that it had a projected unfunded debt for the 1980-81 school year of $171,000 for "current operating expenses then due and owing," the district business manager testified at the June 26, 1981 hearing on its petition that the projected fund deficit had reached $190,378.[2]

In view of the district's practice of preparing certain annual budget control reports on a cash basis while having its general financial reports prepared on an accrual basis, Judge RODGERS, of the common pleas court, held that the district had "been operating on cash rather than an accrual basis [of accounting][3] at the time of passing its relevant annual budgets and setting its tax levies."

---

[2] The district never embodied the higher figure in any formal amendment to its petition.

[3] The independent accounting firm engaged by the district to verify the unfunded debt figure provided definitions which illustrates the mechanics of those accounting bases:

*Definition of the Cash Basis Method of Accounting*

When the cash basis of accounting is used, revenue is not recognized when the exchange transaction occurs, but rather only when the cash is collected. Similarly, expenses are not recognized when they are incurred as a result of an exchange transaction, but rather only when the cash payment is made. Therefore, net increases or decreases in the fund balance is essentially a cash concept. Cash basis accounting is not a generally accepted accounting principle.

*Definition of the Accrual Basis Method of Accounting*

When the accrual basis of accounting is used, revenue is considered realized (i.e., earned), and is recognized in the accounts and reports, in the period in which the transaction occurs, regardless of the periods in which the related cash is collected. Similarly, an expense is recognized in the period in which the transaction occurs, regardless of when the related cash is expended. Therefore, net increases or decreases, in the fund balance is essentially an economic concept.

After summarizing the district's presentation of evidence,[4] Judge Rodgers reviewed our decision in

[4] Judge Rodgers' able summary of the testimony makes it clear that the school district presented evidence as to negative balances rather than evidence of legal "obligations" as such:

The business manager . . . testified that on June 30, 1977, the district had a positive fund balance of . . . $53,648.00 . . .; that on June 30, 1978, the district had a negative fund balance of about . . . ($8900.00), because of unexpected repairs to . . . school buildings; . . . that on June 30, 1980, the negative fund balance had increased from . . . ($91,000.00) to about . . . ($171,000.00), because of a reassessment of the coal property, an overestimate of receipts from the local real estate property tax, and an overestimate of subsidy payments; that as of June 30, 1981, the negative fund balance had increased by about . . . $19,000.00 . . . to about . . . ($190,000.00), because of an overestimate of wage tax receipts and underestimate on utility and fuel bills, a refund to a real estate developer, and the bankruptcy of the Country Club Land Company.

A certified public accountant, called by the school district, testified . . . that the reason for the decrease in the fund balance for the fiscal year 1977-78 was primarily caused by the transition from a cash basis to a modified accrual basis; for the next fiscal year 1978-79, the accountant agreed with the business manager that a part of the increase in the negative fund balance was the failure to receive budgeted state revenues of . . . $75,000.00 . . . but, also, stated that the district had failed to budget an expenditure . . . for an installment payment on the improvement and equipment note payable; . . . for the 1980-81 school year, the accountant simply stated as the reason for the increase in the negative fund balance by about . . . $19,000.00 . . . an overestimate of anticipated revenues.

. . . .

Another certified public accountant, whose firm regularly audited the school district, testified . . . that as of June 30, 1981, the district had assets of about . . . $138,000.00 . . ., including about . . . $100,000.00 . . . in cash, but liabilities of about . . . ($329,000.00), primarily for unpaid teachers' salaries, payable in the months of July and August of 1981 (T. 40, 82).

62 Wash. Co. Rep. No. 5, page 28 at 29-30 (October 1, 1981).

*Borough of Aliquippa Appeal,* 58 Pa. Commonwealth Ct. 214, 427 A.2d 693 (1981), where we construed the unfunded debt provision found at 53 P.S. §6780-209, which reads:

For the purpose of this article, *unfunded debt shall mean obligations of the same or a prior year incurred for current expenses* (including tax anticipation notes), *due and owing* or judgments against the local government unit entered by a court of competent jurisdiction after adversary proceedings, for the payment of either of which category the taxes and other revenues remaining to be collected in the fiscal year and funds on hand will not be sufficient without a curtailment of municipal services to an extent endangering the health or safety of the public or proper education of school children, and the local government unit either may not legally levy a sufficient tax for the balance of the fiscal year, or a sufficient tax, if legally leviable, would not be in the public interest. (Emphasis supplied.)

Although the district's witnesses testified, and the common pleas court found, that outstanding fiscal year 1981 (July 1, 1980-June 30, 1981) liabilities were *primarily* for teacher's salaries earned over the school year, to be paid in July and August of 1981, the district never provided any itemization or breakdown of the *specific liabilities* which constituted the total amount claimed by the district to be qualified unfunded debt.

Judge RODGERS concluded that the district had failed to satisfy the terms of the Act:

The district had no creditors, either teachers or suppliers, to whom monies were due on or before June 30, 1981. (T. 58) The district did have a liability for teachers' salaries

earned and owing for the school year 1980-81, in an amount in excess of Two Hundred Thousand Dollars ($200,000.00), (T. 101), but this amount was not due until July and August of 1981.

. . . .

The Local Government Unit Debt Act specifically requires that the obligation not only be owing but be *due* or be a judgment. . . . The teachers earned their salary during the nine (9) month period from about September 1, 1980 through May, 1981, but their salaries were paid over a twelve (12) month period, ending in August, 1981. Thus, it is clear that the unpaid teachers' salaries owing for 1980-81 fiscal year, which comprise the major claim of unfunded debt, were not due on June 30, 1981. (Emphasis in original.)

62 Wash. Ct. Rep. No. 5, page 28 at 30, 34 (October 1, 1981).

We must agree with Judge RODGERS that the teachers' summer salary amount could not be considered due and owing at the determinative time. Although the teachers had an option to call for payment of their summer-month salary in June, the district did not prove how many teachers, if any, exercised that option, but merely treated the whole amount as an accrued obligation.

Although the common pleas court went on to consider whether the district met the additional requirements for issuance of bonds,[5] our affirmance here is

---

[5] As this court held in *Borough of Aliquippa Appeal*, 58 Pa. Commonwealth Ct. at 223-24, 427 A.2d at 698:

The issuance of bonds under the Act depends upon both a determination by the court of whether (1) the obligations or judgments are indeed unfunded debt, and (2) whether all four criteria set out in Section 510(a) have

based upon those terms of 53 P.S. §6780-209 which establish the first requirement that there must be proof of "obligations" which are "due and owing," *Borough of Aliquippa.*

With respect to the elements of a debt, a determination of whether it is due and owing on a certain date in a *legal* sense is necessarily independent of the accounting methods used by a particular local government unit. A uniform application of the Act would be precluded were the accounting basis of the particular petitioner to control eligibility for unfunded debt status. The statute does not provide for the funding of a negative net worth or any other accounting concept of a deficit. It does not deal with accounting concepts at all, but with the legal concept of an "obligation" (or judgment) which is "due and owing."

Because the district here, unlike the borough in the *Borough of Aliquippa Appeal,* has failed to particularize each "lawful obligation" which makes up the negative fund balance asserted to be an unfunded debt, we cannot determine to what extent the elements of the $190,378 are in fact legally due and owing. See note 4 above. General reference in the record to unpaid obligations to district suppliers, along with the sum for teachers' salaries, are insufficient to sustain a detailed inquiry—such as we performed in the

been satisfied; i.e. (i) That the unfunded debt is a lawful obligation of the local government unit; (ii) That there has been an unforeseeable decline in revenues, *or* that the taxes levied have not produced the revenues anticipated, *or* it was not reasonable to foresee these obligations; (iii) That paying the (unfunded) debt by curtailing municipal services will be dangerous to the public health, safety or education, and (iv) That it is neither feasible nor is it in the public interest to levy additional taxes in the current fiscal year.

Section 510(a) of 1972 Act has been reenacted as Section 29(a) of the 1978 Act, 53 P.S. §6780-210(a).

*Aliquipa* case—into qualification for unfunded debt status.

Because the district failed to establish the first prerequisite for authority to issue bonds under the Act—that "the obligations or judgments are indeed unfunded debt," *Borough of Aliquippa Appeal,* 58 Pa. Commonwealth Ct. at 223, 427 A.2d at 698—the common pleas court's denial of the district's petition was proper.

ORDER

Now, April 2, 1982, the order of the Court of Common Pleas of Washington County, No. 52 June Term, 1981, dated September 8, 1981, is affirmed.