Kenneth A. Bundy et al., Petitioners *v.* Carl A. Belin, Jr., Respondent.

Argued March 5, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Richard M. Rosenbleeth,* with him *George H. Kalikman, Marvin Comisky, Goncer M. Krestal,* and *Neal Steinman, Blank, Rome, Comisky & McCauley,* for petitioner.

*Carl A. Belin, Jr., Belin, Belin & Naddeo,* for respondent.

OPINION BY JUDGE ROGERS, March 16, 1982:

A taxpayer of Clearfield County, Carl A. Belin, Jr., brought suit in equity against the Commissioners of Clearfield County seeking an order enjoining the commissioners from fixing the rate of taxation for the year 1982 in an amount in excess of twenty mills, the limit fixed by Section 1770 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §1770. The rate proposed exceeded twenty mills on account of the commissioners' intention to pay tax anticipation notes issued but unpaid in the year 1981. It is the position of the commissioners that the matter of the authorization of an excessive levy to pay tax anticipation notes unpaid in the year of issuance is one committed exclusively to the jurisdiction of the Department of Community Affairs pursuant to the Local Government Unit Debt Act, Act of July 12, 1972, P.L. 781, No. 185, reenacted by the Act of April 28, 1978, P.L. 124, *as amended,* 53 P.S. §6780-1 *et seq.* (hereinafter referred to as the Act) and that the County Code by exception authorizes an excessive levy to pay tax anticipation notes unpaid in the year of issuance. The commissioners filed preliminary objections asserting the exclusive jurisdiction of the Department of Community Affairs and a demurrer.

After argument, the court below decided that it had jurisdiction by virtue of Section 1770 of the County Code, and overruled the preliminary objections directing the county to file a responsive pleading. The court

did not discuss the matter of the demurrer. It also refused the county's application to certify (pursuant to 42 Pa. C. S. §702(b)) that the interlocutory order with respect to the preliminary objections involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate determination of the matter. The county commissioners thereupon filed a petition for review in this court of the court of common pleas' refusal to certify the matter for appellate review. After consideration of the county's brief and Mr. Belin's response, we decided that the question was controlling and substantial and that the matter would be advanced by our deciding an appeal from the lower court's action of overruling the preliminary objections. We entered an order to this effect on February 26, 1982 and heard argument on March 5, 1982.

The parties agree that there are no issues of disputed fact and that the matter is entirely one of statutory law involving Section 1770 of the County Code and a number of the provisions of the Local Government Unit Debt Act.

The tax levy proposed by the commissioners is thirty and one-half mills per dollar of adjusted valuation, ten mills of which was for the purpose of paying the tax anticipation notes not paid in 1981 as had been promised when they were issued. Section 1770 of the County Code is as follows:

> No tax shall be levied on personal property taxable for county purposes where the rate of taxation thereon is fixed by law other than at the rate so fixed. The county commissioners shall fix, by resolution, the rate of taxation for each year. No tax for general county purposes in counties of the third, fourth, fifth, sixth, seventh and eighth classes exclusive of the requirements

for the payment of rentals to any municipal authority, shall in any one year exceed the rate of twenty mills on every dollar of the adjusted valuation: *Provided, however, that the rate of taxation for payment of the interest and principal on any indebtedness incurred pursuant to the act of July 12, 1972 (P.L. 781, No. 185), known as the 'Local Government Unit Debt Act,' or any prior or subsequent act governing the incurrence of indebtedness of the county shall be unlimited. . . .*[1]

In its preliminary objections the county asserted that the portion of its levy in excess of twenty mills was necessary for and intended to fund tax anticipation notes issued and due in 1981 but unpaid in that year. Emphasizing that portion of the statutory provision above quoted which excludes from consideration in the calculation of the maximum rate of taxation taxes "for payment of interest and principal on any indebtedness incurred pursuant to . . . the 'Local Government Unit Debt Act,' " the county argued before the court below and argues here that the tax anticipation

---

[1] The emphasized language was added by amendment made by Act No. 1981-23 enacted May 22, 1981. At the same time there was deleted from the former version of Section 1770 an exception for the payment of interest and principal of the "funded debt of any such county." It could fairly be inferred that the added language would be a substitute for the old and have the same meaning, that is, that funded debt, the concern of the Act, still remains excluded from the maximum rate of taxation contained in the County Code. This makes sense because only the incurrence of funded debt is subject to the approval of the Department of Community Affairs. As we have explained neither tax anticipation notes when issued, nor when they are unpaid in a year of insufficient revenue for their payment, are funded debt.

*We are told that one-half mill of the proposed tax was levied for library purposes authorized by the Library Code, 24 P.S. §4101 et seq. to be levied in this amount in excess of the twenty mill limit.*

notes unpaid in 1981 are a debt incurred pursuant to the Local Government Unit Debt Act and, therefore, that the rate of taxation is lawful. On this basis the county asserts that Mr. Belin has failed to state a cause of action upon which relief can be granted.

As a further basis for preliminary objection, the county argues that the Court of Common Pleas was without jurisdiction to entertain Mr. Belin's challenge. In this regard the county relies on Section 901(b) of the Act, 53 P.S. §6780-401(b), which grants exclusive jurisdiction to the Department of Community Affairs to

> determine all procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to this Act, including without limitation, the regularity of the proceedings, the validity of the bonds, notes, tax anticipation notes or other obligations of the local government unit, and the legality of the purpose for which such obligations are to be issued.

We will first address the jurisdictional issue which will require a brief discussion of the contents and organization of the Act. The Act codifies the procedures required to be followed by municipalities in this Commonwealth in order to incur debt and specifies, as to various classifications of debt, the maximum lawful amount of such debt. Article II of the Act permits a municipality to incur without limitation as to amount debt which has been the subject of a municipal referendum: so-called "electoral debt." The procedures which must be followed in the advertisement and conduct of the election are specified in Article III. Article IV of the Act specifies the procedures by which a municipality may incur nonelectoral debt within the limitations as to amount contained in Article II. Spe-

cifically, the provisions in Article IV empower a municipality's governing body to issue bonds and notes by means of an ordinance the content of which is also set forth in great detail in that article.

The issues involved in the instant matter are primarily controlled by Article V of the Act having to do with the issuance and repayment of tax anticipation notes. Pursuant to the provisions of Article V a municipality may by resolution and in anticipation of its tax receipts for a particular fiscal year issue tax anticipation notes in an aggregate amount equal to no more than 85 per cent of that year's tax levy. Such tax anticipation notes must be stated to mature on a date prior to the last day of the fiscal year in which the notes are issued. The notes then constitute a lien on and are secured by the pledge of taxes levied in the year of issuance.

Section 505 of the Act, 53 P.S. §6780-205, on which the county primarily relies, provides that tax anticipation notes unpaid in the year of issuance "shall be deemed to be nonelectoral debt enforceable in the manner of a general obligation which, unless funded pursuant to this article, shall be included in the budget of the [municipality] for the ensuing fiscal year. . . ." As to the debt classification at the time of their issuance, Section 102 of the Act, 53 P.S. §6780-2, provides that tax anticipation notes are not "debt" within the meaning of the Act.

As we have indicated, the county challenged below and challenges here the jurisdiction of the Court of Common Pleas to entertain Mr. Belin's suit in equity on the grounds that the Department of Community Affairs has been empowered to determine matters arising from the proceedings of municipalities taken pursuant to the Act. The complete answer to this jurisdictional question, as was decided by Judge REILLY for the court below, is that no matters arising from

proceedings of the county taken pursuant to the Act are here at issue.

On issuance of the tax anticipation notes the proceedings pursuant to the Act required to be undertaken by the county included the adoption of an appropriate resolution and the filing with the department of a copy of this resolution together with a certified estimate of the anticipated tax receipts. It is undisputed that exclusive jurisdiction to determine "the regularity of [these] proceedings [as well as] the validity of the . . . tax anticipation notes" is committed to the department by Section 901(b) of the Act. However, the matters here at issue do not concern the resolution authorizing the issuance of the notes or the required departmental filing or the validity of the notes themselves but instead concern a matter traditionally committed to the courts the lawfulness of the county's proposed tax levy in the light of the limitations as to the rate of taxation contained in the County Code. *See Bradbury v. Burschell,* 220 Pa. 439, 69 A. 1108 (1908). Finally, no proceedings were or were required to be taken by the county pursuant to the Act on account of the failure of the county to repay the tax anticipation notes during the 1981 fiscal year. No matter now at issue arose from proceedings of the county taken pursuant to the Act. Therefore, the court below correctly overruled the county's jurisdictional preliminary objection.

On the demurrer, as we have indicated, the county contends that its unpaid tax anticipation note is "debt incurred pursuant to" the Act and, therefore, is excluded from consideration in the calculation of the maximum permissible rate of taxation pursuant to Section 1770 of the County Code. This contention stands or falls on the meaning of that portion of Section 505 of the Act, 53 P.S. §6780-205 above quoted which "deem[s] to be nonelectoral debt" tax anticipation notes unpaid in the year of issuance. The county,

as we understand it, argues that since unpaid tax anticipation notes are deemed to be nonelectoral debt they must also be, by some process of deeming or otherwise, debt "incurred pursuant to" the Act. We disagree.

The purpose of the quoted language in Section 505 is simply to classify unpaid tax anticipation notes as among those obligations which are unsupervised by the electorate and limited as to total amount by the provisions of Article II of the Act. This mandated classification, however, does not answer the question of whether this species of nonelectoral debt, unpaid tax anticipation notes, was incurred pursuant to the Act. It is clear that the tax anticipation notes at the time of their issuance were not debt incurred pursuant to the Act for reasons we have previously discussed having to do with their express exclusion from the Act's general definition of debt. Neither were they incurred pursuant to the Act at the point at which they matured without repayment. Section 102(c)(8) provides that as to nonelectoral debt incurred pursuant to the Act, the point in time at which it is incurred is the date of the adoption of the requisite municipal ordinance; a date and a requirement inapplicable to these notes either at their issuance by means of a resolution or at the point when they were deemed to be nonelectoral debt.

The conclusion that unpaid tax anticipation notes are not debt incurred pursuant to the Act is further compelled by Section 411, 53 P.S. §6780-161 which specifies the proceedings which must be undertaken in order to incur nonelectoral debt; none of which proceedings were undertaken by the county in connection with these notes; and Section 509 of the Act, 53 P.S. §6780-209 defining as "unfunded debt" which "shall not . . . include debt incurred under this act" tax anticipation notes, like those here involved, which were issued in a prior year and which became due and owing

in a year in which revenues are insufficient for their payment without the curtailment of municipal services. With respect to the funding of unfunded debt, the Act commits to the local courts of common pleas jurisdiction to entertain petitions by municipalities requesting the court's approval of the issuance of bonds or notes "in such amounts and over such number of years, not exceeding ten, as the court shall find will accomplish the payment of the debt without endangering the rendering of municipal services or requiring the levying of excessive taxes." Section 510 of the Act, 53 P.S. §6780-210.[2]

---

[2] Sections 509 and 510 provide in pertinent part:

### SECTION 509: UNFUNDED DEBT

For the purpose of this article, unfunded debt shall mean obligations of the same or one or more prior years incurred for current expenses (including tax anticipation notes), due and owing . . . for the payment of . . . which . . . the taxes and other revenues remaining to be collected in the fiscal year and funds on hand will not be sufficient without a curtailment of municipal services to an extent endangering the health or safety of the public . . . and the local government either may not legally levy a sufficient tax for the balance of the fiscal year, or a sufficient tax, if legally leviable, would not be in the public interest. *Unfunded debt shall not, however, include debt incurred under this act. . . .*

### SECTION 510: APPROVAL BY COURT

(a) Whenever the governing body of a local government unit shall be of the opinion that it has outstanding unfunded debt, it may, by petition to the court of common pleas setting forth the facts, request approval for the issuance of bonds or notes to fund the unfunded debt. After hearing, on such notice to the local government unit and its taxpayers as the court may prescribe, the court shall make an order granting authority to fund all or a part of such unfunded debt if the court shall find that such unfunded debt is a lawful obligation of the local government unit, that there has been an unforeseeable decline in revenues, or that taxes levied have not produced the revenues anticipated or that it was not reasonable to foresee such obligation; that paying

Finally, Section 505 of the Act expressly permits a municipality to fund unpaid tax anticipation notes "pursuant to this article" as an alternative to the course here chosen by the commissioners of inclusion of the unpaid balance in the county's total of nonelectoral debt as well as in the county's budget for the ensuing fiscal year. Had the commissioners chosen this alternative method of funding the unpaid tax anticipation notes—by, for example, the issuance of new bonds or notes—the debt thereby incurred would have been debt incurred pursuant to the Act and excluded from the maximum rate of taxation contained in the County Code. Of course, the new debt instruments so issued would have been required to conform to the protections and limitations contained in the Act. Instead, the commissioners have chosen to remain without the requirements, protections, and limitations of the Act and, therefore, to remain within the limitation as to the maximum rate of taxation contained in the County Code.

The county's preliminary objection in the nature of a demurrer was properly overruled.

Accordingly we enter the following

---

such debt by curtailing municipal services will be dangerous to the public health, safety or education, and that it is not feasible or not in the public interest to levy additional taxes in the current fiscal year. The funding debt so approved shall be stated to mature in such amounts and over such number of years, not exceeding ten, as the court shall find will accomplish the payment of the debt without endangering the rendering of municipal services or requiring the levying of excessive taxes. If the funding of the unfunded debt has not been approved by a vote of the electors, the order of the court upon cause shown may fix the portion thereof, if any, which shall be charged against the nonelectoral debt limitations of the local government unit under sections 202 and 505 of this act, during the time such funding debt is outstanding.

ORDER

AND Now, this 16th day of March, 1982, the order of the Court of Common Pleas of Clearfield County in the above-captioned matter is affirmed.